Madam Clerk, will you please call the first case? 16-1562 B. Woodward v. Brennan v. Penister I'd like for the attorneys to step up to the podium. I want you to tell the court your name, who you represent, and approximately how long your argument will take. Good morning, counsel. Good morning, Adrienne River, on behalf of the defendant, Brennan Penister, from the Office of the State Appellate Defender. And I expect no more than 15 minutes, depending on questions. I'd like to reserve 5 minutes for rebuttals, if I may. Very good. Good morning, counsel. Good morning, Your Honor. Matthew Connors, Assistant State Attorney, on behalf of the people of the state of Illinois. Thank you, Your Honor. How much time do I need? 15 minutes, Your Honor. Very good. Thank you, Your Honor. Please proceed, counsel. Thank you. Good morning, Your Honors, counsel, and students. I plan on addressing Issues 1A and B. And, of course, I'll answer questions for the other issues, if the justices would like that. Argument 1A is that counsel was ineffective for not filing a motion to suppress the gun evidence on the basis that the police lacked a reasonable belief that Penister, the passenger, was armed and dangerous. And Section B of that issue is that trial counsel was further ineffective for not filing a motion to quash the arrest on the basis that there was no probable cause of a weapons offense, just merely based on seeing the presence of a gun, because at that time, a person in 2014 could lawfully carry a gun in public. So, with issues starting with Issue 1A, the police cannot routinely start searching cars as a matter of course when they pull over a car for a traffic violation. The case law is that- The traffic stop was justified, is that correct? Yes, I'm not- In fact, you ran a red light, is that correct? The driver did, yes. And traveled four blocks after running that light. That's true, although I don't- So, was there justification for the officer to stop that car? Yes, I'm not contesting that. So, I note that the trial court, in its ruling, didn't make the finding that the driver didn't know that the police were following him, I guess until- So, it's not a fact that he had on those mars lights? The officer did testify that the lights were on, and it took about, I think, four blocks to curb the vehicle. The trial court found that, for some reason, the driver hadn't noticed until- Did he curb the vehicle, or did they drive into a gas station that had a lot of lights? Yes, they went to a gas station. They drove into the gas station, or next to the gas station, and the officer said it wasn't very bright there, so they had the spotlight on from the car, and there were also lights from the gas station illuminating it, and the officer said that he curbed it at the gas station, if he was going. So, Justice Cox gave us a good summary of the facts. So, it was that the police needed specific and articulable facts to show a person is armed and dangerous before they can search the person or the car in a terrorist stop, which is a form of what just happens to be in a vehicle. A traffic stop that morphed into a terrorist stop? Because the original stop was for a traffic violation, correct? Right, yes. They had a reasonable belief that an offense had been committed, and the police were authorized to pull over that car. But then, the officer noticed, as he approached the car, that Mr. Penister, who was in the front passenger seat, put a large, dark object into the glove compartment. And, obviously, he's not the driver, so now he's investigating what he saw. But the problem is that the standard wasn't met for proving that he was armed, much less dangerous, because, first of all, the officer testified he could not even say what the object was. He said he had a suspicion that it could be a gun, but he really couldn't say what it is. Did he say that the officer said it could be a gun? I'm sorry, what? He said the officer said it could be a gun. He said he had a suspicion that it was a gun, but he really couldn't say what the object was. He just described it as a large, dark object. He said he had suspicions, that was his word. Suspicions that it was a gun, is his word? Or just suspicions? He said he had suspicions. I believe those are my notes indicating. Then he went on to say he could not exactly say what the object was. So, he said there were suspicions it was a gun, but he couldn't say what the object was. Yeah, it was just a hunch. He didn't clearly see the object. He just described it as a large, dark object. So, he had suspicions that the defendant, or, to tell the truth, it was a cigarette. Yes, he also said that when he asked the testister what it was, and the response was cigarette, that the officer didn't believe it was cigarette. Okay. And then the officer asked him, well, show me the cigarette. And he said no. And the defendant said no. Right. And then he asked him to step out of the car, which he did. And then he just went into the glove compartment and took the object out and found that it was truly a gun. So, the glove compartment was not locked? Apparently not, no. And I assume there's a latch that must close, but it was an effect case in a dark room. But it was not the defendant's car, so why would the defendant expect any kind of expectation of privacy when it's not his car, it doesn't belong to him. Yes. Why would he expect that somebody would, a police officer would? Well, I think it's common sense that you are in a passenger, you're a guest of the driver, and if you put some property in a compartment out of plain view, I mean, I think that was his intention. He had certainly a subjective expectation of privacy because he refused to open it. I think that's just kind of common sense. Well, but maybe it's common sense, but the case law doesn't say anything. There are a lot of cases that say that a passenger in a car doesn't have the kind of privacy rights maybe the owner of the car has, because it's not his or her car. Well, I don't think there's a case that exactly holds against my position, and I can explain that. The statement lies heavily on the Johnson case, the Illinois Supreme Court case. In that case, not only did the defendant not make the argument that he had an expectation of privacy, if you look at the facts closely, he didn't even say he put the gun there. They found a gun under the passenger seat, and he admitted that he had used the gun. So under those facts, I could see that the court would find there was an illegitimate expectation of privacy. I mean, there are cases that say if you are a passenger and you have your own bag in the car, you have expectation of privacy over the content. So I'm thinking it's logical to conclude that if you have expectation of privacy over a bag you bring in, why wouldn't you have one? This wasn't in his own bag. It was in the owner of the car's book compartment. Right. I think if you're getting no ownership interest in the place where this thing was. Right. It's not ownership interest. But I mean, there are cases that have found passengers can have some kind of legitimate expectation of privacy. That doesn't excite you, but I saw later that they were limited. Those facts were like an extended script. So I think that if you are a legitimate lawful passenger, and unless there is some prohibition by the driver, who has permission to drive the car, that you can't put your belongings within the car, then you have an expectation of privacy. I'd also know... Well, why would you have an expectation of privacy when you said it was unlocked? The person with the key presumably was the driver. So anybody can go into the glove compartment. There are two passengers and a driver in the car, three people. When you put something in the glove compartment, anybody can go through it, particularly the owner. So where is the expectation? The expectation of privacy is vis-a-vis the police officer. Well, why would... But again, you wouldn't expect others in the car. There's no privacy. So why would the police officer... It's not like you were just saying, a bag that somebody would have on their lap that belonged to them or put in the truck where they expected something not to be looked at. I think if you have an expectation of privacy in your own bag and your belongings, you can make a statement. So that's different than... Well, I don't think it's that different because a passenger, another person in the car, can simply open up your bag and look at it. It's there. It's not locked. And so similarly, if it's a glove compartment and there's no prohibition from you putting something in it, I think it's common sense that you wouldn't expect that you would have to show the police officer or allow... I mean, it's unlawful for a police officer to go into a glove compartment because he didn't see that he was armed and there was no basis to find him in danger. So it's an unlawful search. And then... In what case are you relying? I... In the Michigan case, I couldn't find an Illinois case exactly on point. I'm also analyzing two Illinois cases where there's an expectation of privacy like in your bag that you bring with you. And also, I wanted to note that that Rollins v. Kentucky said that in Raffles v. Illinois, the United States Supreme Court rejected the notion that arcane concepts of property law also control the ability to claim Fourth Amendment protection. So, the ownership... There's several factors. Ownership is one. But that's not the only factor. There's also subjective expectation of privacy. And he didn't, I think, have the ability to control access to that glove compartment. So, at the point in time that you maintain that this expectation of privacy came into existence, Mr. Pinnister could control that glove compartment because he was sitting right in front of it, right? Right. He was using it. I mean, there's another passenger in the back. He wouldn't have access to it. But let me ask you another question. Sure. We start with the traffic stop. The vehicle is curved in the gas station. The officer walks up on the side of the car. He becomes interested in Mr. Pinnister because he observes him place or testifies when he observes him place some unknown object in a glove compartment. You haven't discussed the fact that he did ask Mr. Pinnister to step out of the car, correct? Yes, after he asked him what was in the glove compartment. And he refused to tell him. Is that correct? He said it was cigarettes. And then the officer said, you know, And he said no. Then he said step out of the car and he did. So what was the justification for the officer focusing on Mr. Pinnister? The mere fact that he saw him place an unknown object in the glove compartment was a justification for him asking him to remove himself from the car? He didn't stop the car initially because of actions by Mr. Pinnister. Is that correct? Right. So what's the justification for him telling Mr. Pinnister to get out of the car? Well, I believe that under Pennsylvania v. MIMS, in a traffic stop, police are authorized to ask passengers to step out of the car. But I think that's the only lawful conduct by the police in this case. All he saw was a mere movement, some vague object. He wasn't sure what it is. He doesn't have any obligation to answer that question. Why doesn't he have an obligation to answer? Because he's not being investigated for anything to do with the traffic violation. If I run into a police officer on the street and he wants to investigate, he can ask questions. Case law says I don't have to answer. I can go on my way. I can ask him my name and address. But he's not obligated to tell him what was in the glove compartment. Let's just roll back two seconds. So the cop walks up to the passenger side in a well-lit area and he sees the defendant in the passenger seat with something that he recognizes to be a big, black, shiny object. I don't think he said shiny. He didn't say shiny? No. That's not my recollection. Okay. That must have been in one of the briefs. He sees the passenger put something in the glove compartment. He says, what was that? The passenger says, oh, it's a packed cigarette. The cop says, let me see it. I don't know if he said pack. I think he just said cigarette. So it could have been a cigarette carton. And the defendant says, no, he's not going to open the glove box. So the cop says, well, get out. And then the passenger did that. Yes. So at that point, you've got no expectation of privacy because it's not the defendant's car or glove compartment. And whatever it was that the officer saw the defendant put into the glove compartment, the passenger's not denying that he put something in the glove compartment. He didn't say, no, I never touched the glove compartment. He just said, I'm not going to open it. Right. So when the officer then proceeds to search the glove compartment, you're saying there was a physical search. Yes. Because there was nothing to connect this object to the defendant? No, that seeing him put an object into the glove compartment was not enough to make a reasonable inference that it was a gun. It was just a hunch. And officers, based on hunches, cannot start going through your car. And it doesn't matter that he didn't own it. He was a lawful passenger. He was an invitee. He still had some Fourth Amendment rights. And not only there's a two-part test to it, there has to also be reasonable and articulable facts to show that the person was dangerous. So here, even if he had some hunch it might be a gun,  there aren't any other facts to show that he wanted to use the gun against the police officer. There are no threatening remarks. He answered questions. He just refused to open it up. And he exited the car when he was asked. So he was compliant. OK. I just want to point out, it was your brief that said, Officer with a black swaddle, front seat passenger, later identified as a pedestrian, placed a large black object inside the glove compartment. It was your brief that said that. That's where I got that from. Oh, I just said it didn't think it was shiny. As large black. What about- Wait a minute. The officer said, he really couldn't tell what it was. We don't have testimony here that the officer said, I really think that's a gun. It's just a hunch. What's it based on? Is it who these people are? Is that time of night? I mean, there has to be specific facts, and he did not articulate them, and that's why it should be fleshed out at a hearing. I want to ask a different question about the officer. My understanding from the record is, the officer did not ask whether he could search the car or glove compartment. That's correct. Right. He didn't ask either the driver or any of the passengers that. He just did. Is it relevant at all to your argument that the police officer did not ask for permission to search the glove compartment? Yeah. I mean, if he had gotten consent, that would be different. But he didn't. So the fact that he didn't get consent, how does that figure into what you're arguing? I'm sorry. The fact that he did not ask for consent, how does that figure into your argument? Well, if the search is not consensual, it has to be based on the law, and the law is he has to have the specific and articulable facts to form a reasonable belief that his safety or the safety of someone else was in danger, and that just wasn't met here. Did they argue safety? Does the state argue safety? I don't know if the state argued that. At one point the officer said he had him step out for a safety check, but he never specifically testified, I felt that my safety was in danger. And that wouldn't make any sense because he said I could not make out what the object was. So did the officer have a reason to be concerned? This is in the evening. They're in a white gas station. Should he have been concerned about his safety if an unknown object is placed in the glove compartment? Is it reasonable for him to be concerned? He should be concerned, but he has to have reason to be. What is reasonable? Was it reasonable for that officer to be concerned on that evening about the unknown object in the glove compartment? I don't think there are enough facts to elevate that concern of a mere hunch that it could be possibly a gun to allow a search. But it's your position that placing an unknown object in a glove compartment is not evidence of any crime. That's right. And also remember at this time, ownership of a gun, if you have the proper paperwork, is not a crime anymore. Let's stick with the search and whether or not the officer had a reason to worry. So, for example, if he had, it's your brief, it says it's a large, black, shiny object. It's your brief. So if the officer says he saw a large, black, shiny object, the defendant says no, it's a cigarette. The officer says, I don't think so, open the glove compartment. The defendant says no. The officer says, please step out of the car. It says the officer had not searched the glove compartment and had let the defendant get back in the car, and they drove off and, God forbid, somebody shot the officer. I can see where in an officer's frame of mind an officer would say, I better check and see what's going on here to make sure that everybody else is safe and that we're safe. I can actually see that happening. So I'm wondering why you object to that as a safety search. Because there are certain requirements before a safety search can be undertaken. Well, it's your brief. It says it's a large, black object. It's a large, black object. It could have been a cigarette carton. It could have been a bag. It could have been something personal. I don't want the officer to see them. There are myriad reasons why you wouldn't want it. It could have been a tape recorder, a cell phone. It could have been anything. It could have been anything. So we can't, we don't have to be sure. Except for the case if the defendant, if he had been carrying a cell phone, would have probably just said, hey, get your cell phone out. And I think an officer could reasonably expect that somebody would say, sure, I'll open the glove compartment. I'll show you the cell phone. No problem. You know, people have different views of privacy. I'm not sure that you can say the amount of money a new person would volunteer with a cell phone. I'm not positive you're arguing about this defendant's expectation of privacy about this glove compartment. And somebody else's car is going to get a cigarette carton. Well, maybe we should move on from that. Okay, fine. So Issue 1B is based on the Inspectorate's counsel for not moving across the arrest as illegal. So at that time, a few months before, the Illinois Tribune Court had held the People v. Aguilar. But the offense for which the officers arrested Mr. Penister was unconstitutional because it violated the Second Amendment's right to bear arms. So merely seeing a gun would no longer provide, without other evidence, would no longer provide probable cause to believe that a weapons offense was being committed. And I cited cases, Horton and Thomas, and I did point out in reply briefs, that those were vacated on other grounds by the Illinois Supreme Court and sent back down. But the reasoning, I think, the reasoning is still valid. The gun, excuse me, so the police immediately arrested him, and only for that void offense. The police didn't do any inquiry, they didn't check any computers to see whether he lacked, whether he had a concealed carry license, whether he had a firearm owner identification card. He didn't ask. So later, Just having the, just to summarize what you just said. The felon was arrested for having a handgun, even though it is legal to have a handgun if you have an FOID card. And they didn't know whether he had a concealed carry license or not. So, without knowing whether the gun was legally possessed or not, he was arrested. That's right. Okay. And that is a basis for a motion to quash the arrest. Yes. Yes, and Aguilar was, you know, there were a lot of big changes in supplemental law. Aguilar was recent. A counsel definitely should have filed that motion. Later, he was indicted for Aguilar is the case that prohibited people from having weapons in their possession. I'm sorry, what? I said Aguilar is the case that prohibited citizens in Illinois from having weapons in their possession. Aguilar said that that one section of the aggravated unlawful use of weapons statute, which the police arrested a defendant for, that that would avoid offense because a person had second-minute right to bear arms in public for self-defense. And this is a post-Aguilar case? That is, the arrest took place post-Aguilar? Right. Aguilar was 2013. This was 2014. So, at the time, people could illegally carry weapons if they had the correct... So, the fact that the officer saw a gun and believed that he might be in possession of a gun would not provide probable cause for him to arrest this defendant. Right. He needs more information, and it would have been... The officer just arrested him immediately. They didn't do any investigation or ask him if he would have a concealed carry license. Well, I did argue in the briefs that under that concealed carry statute, while the police can request that you disclose you have a gun and hand over a license, it's only if it's concealed. And I think if it's concealed, it's defined in the act of being on or about your person. Or in a car, is that correct? Doesn't that statute also provide concealed carry? Right. Or in a car? But not anywhere in the car. It still has to be on or about your person, and so that would be... Would be. Would be. Or says, or, it's on your person, or in the car. No, I think it's on or about your person in the definition of the concealed carry act. So, for example, we're at the point now where a friend is out of the car, police officer's found the gun, and you're saying that's not probable cause. What if the police officer has the defendant out of the car, warns the defendant's name, finds out he doesn't have a police card, finds out he doesn't have a concealed weapon card, and then searches the car and finds the gun? That's okay with you? That establishes probable cause. So the cop has to do all of that before he can do anything about the gun, the loaded gun in the car. Well, I mean, here he found, he went into the glove compartment and then arrested him. So you're saying that the police officer didn't have probable cause because in his head, and as the facts went, at the time that he had the defendant, at the time he was searching for the gun, what he thought might be a gun, a big black shining object, black object, he didn't know whether or not the defendant had a void card or a concealed weapon card. And in Illinois, it is illegal to have a gun if you do not have a void, if you're underage, male, don't have a void card, don't have a concealed carry card, blah, blah, blah. So what you're saying is the officer has to know all of that before he can search for the gun? Well, I just want to make sure I understand what you're saying. Where exactly this went, what you think, where exactly did it go wrong? It went wrong, well, I submit first that the search was unlawful, but in assuming that the search was lawful, the police arrested the defendant right away. And they arrested him for a void offense. So when they arrested him, they didn't have the information that he lacked a firearm, owner's identification card, or a concealed carry license. You have that probable cause of offense was committed before one is arrested, and they did not have probable cause for those offenses when he was arrested. Later, much later, the grand jury adjudicated him for weapons offenses, for lacking a card, for lacking a license. And his previous arrest. I beg your pardon? They found out he also had a previous arrest. But you're saying they didn't do any of that until they… I don't know what you mean by the previous arrest. I'm not sure what you're talking about. He wasn't, I'm not sure what you mean. The search was based on a previous arrest, correct? He was elevated to class 2 based on the state representation that he had a prior AWW, and we admitted that that was incorrect. But before we get into that, I'm going to go back to the statute. Section 524-1.6 provides a person commits the offense of aggregated, unlawful use of a weapon when he or she knowingly carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode. But it's enough if you just have it concealed in a vehicle. Yeah, it is an offense if you are in a vehicle. I was just referring to that one section that the state was talking about where if the person was carrying a concealed weapon, then the police officer could ask them to disclose that and hand over the license. Okay. Anything further, and why don't you start bringing your argument? I'll tell you one question. Is it your position, according to the state, is it your position that police officers must establish probable cause for each element of the crime before arrest? They have to establish probable cause for at least one element. So it's not just one element. Basically, your argument is that they have to establish each element of the crime. You're saying it's just one element. I'm saying the state that there would be no probable cause for any element here. But what would they have to establish for probable cause, just one element? Your position is they establish none.  And an offense can constitute several elements. And in any way, there were no elements of any offense within the knowledge of the officer at the time of the arrest. I will save the rest of my time for a little. Okay, but you're going to stand on your brief with respect to the other arguments that you've raised. Yes. And you're going to reserve some time for rebuttal. Yes. If you let me. Thank you. Mr. Connors. May it please the Court, Your Honor, counsel, audience members. Defendants raise your name again for the matter of Congress on behalf of the people of the state of Illinois. Okay. The first argument, as presented by the defendant, hinges upon whether or not counsel's decision to refrain from filing a motion of distress request was proper. All of these conversations the Court has had in the last 20 minutes or so are discussing whether or not the attorney at the time, before trial, knew the law in Illinois, knew the law as articulated by the U.S. Supreme Court, and made a strategic choice to refrain from filing a motion. And it's the people's position that the very questions that this will ask show why counsel's decision to not file a motion was proper. The first argument the defendant has to overcome is whether or not he had a reasonable expectation of privacy at the time of the search. As Justice Neville said, there is no question about the initial police involvement. There was a traffic signal that was stopped, and approximately four blocks later, the driver pulled into a gas station. And as the two officers approached the car, one on the driver's side, the officer on the passenger side. As he got near the rear quarter panel of the car, he observed the defendant put a large flat object into the glove compartment. This is just the situation he was referring to. That's what the officer testified to at the scene. At page F13 of the record, the officer testified, I fear the defendant was attempting to conceal a weapon. He followed up with the defendant and said, what was that? He asked the defendant, what did you put in the glove compartment? The defendant said, I believe the defendant's word was a package of cigarettes. The officer knew that a package of cigarettes does not equivalent to the large black object he had seen. So based upon that interaction, he said, can you show me, can you open the glove compartment? That's right. But officer safety, safety search. All three of these guys are out of the car now before they find the gun. That's in the briefs. Yes. Okay. So, what was he afraid of? The officer was afraid of it. All three of the people that were in the car are out of the car, have no access to the glove compartment at that point. Even if there is a gun in the glove compartment, what is the officer afraid of? The U.S. Supreme Court has specifically held that even with withdraw a driver or a passenger from a car, you're permitted to look into the car because most traffic stops do not culminate in an arrest or somebody's removed from the vehicle. If a traffic stop that many people would encounter is- Here we have the removal, so there's no question that they're not anywhere near the car. Correct. And the glove compartment is closed. Correct. And it's like- Medlock. Medlock is closed. Correct. And Michigan was long decisive by defending, specifically gave police officers the right to search any of these- To search or to look into. Excuse me? To search or look into the car. To look into those positions in the vehicle where a weapon could be stored and specifically refer to a glove compartment as one of those locations where a weapon could be stored. One of the issues we're trying to address in this conference is whether or not just seeing a large black object provides probable cause to ask the plaintiffs to get out of this car. Just a large black object. Well, there's two questions in one chapter. First of all, there has already been case law that's been cited by the people that you can ask a passenger to exit a vehicle. That's done in order for an officer to remove it. Mr. Connors, I want you to step back. What I want you to tell me is whether or not a large black object provides probable cause for an officer to do what he did in this case. He didn't say he saw a gun or a weapon. He saw a large black object. Let me ask you a question this way. Is Mr. Pemister violating the law with a large black unknown object? There's some dispute as to whether or not it was shot, but it's a large black object. We can agree on that, right? So, is Mr. Pemister violating any law with a large black object? It depends on what that object is, Your Honor. But doesn't it make it more suspicious that if it was an innocent large black object, when the officer said, well, show me, he didn't pull it up and say, oh, look, I have the camera. Oh, look, I have the tape recorder. Oh, look, it's my cell phone. Oh, look, it's whatever. Yes, Your Honor. So, at that point, wouldn't the officer say, hmm, that now turns it into something suspicious? Yes, Your Honor. But even as a predicate to that, case law is clear that this defendant would not have been able to prevent the officer from looking into the glove box. The people's position is one of the reasons counsel chose to refrain from filing an action is that she was aware of Rutgers v. Illinois and all of those cases where they talk about a passenger did not enjoy a right to privacy in a vehicle. So, your position is that in Illinois, anyone who's a passenger in a car and has something in the car that belongs to them, it's free for the police to search. No, Your Honor, that's not true. Okay, where does it stop? Where do we draw the line in Illinois? Although the cases are not in the defendant's brief, there are two cases in Illinois where courts have found a reasonable expectation of privacy. The first case hinged upon a passenger who was in a car for a long trip from Colorado to Illinois, and the court determined that in that circumstance, that car was basically a home for the duration of the car ride. So, they said, you have a reasonable expectation of privacy. So, you're saying there's a long ride exception. It's basically, what kind of familiarity would you have with that? If you were expected to be in the car for multiple days... So, a long ride is an exception. Yes. And then the other one is, if a defendant who has, let's say, a bag, an officer is not free to open up that bag, if it's a sealed bag, because for the same reasons that this court has touched upon before, the defendant would have a Fourth Amendment right in his own personal bag. So, if the defendant had a knapsack in the backseat, the officer couldn't have gone on a fishing expedition, opened up the knapsack. But other than those two, you're saying that in Illinois, any time anyone gets in the car as a passenger, except with your own bag, anything you put in that car, in the trunk, in the glove compartment, under the seat, is searchable by the police after a legitimate stop. There is a multi-factor test illustrated by the Illinois Supreme Court where they talk about five different factors that this court would evaluate, and it's the application of those factors which would lead to an outcome. Okay, let's look through those factors, because apparently we have to look through the factors. Yes. So, the first factor would be whether or not the, and we're going to use the defense in this case, whether or not the defendant had ownership of the property that was searched or seized. In this case, the defendant did. No, the defendant did not have ownership of the vehicle. Oh, I thought you said of the property, the car. So, he did not have that. Furthermore, whether the defendant was legitimately present in the area searched. People can see that there is nothing in the record which would say he wasn't in the car legally. That's fine. Next, defendant's possessory interest in the area. There is no possessory interest in the area, because, again, it was a vehicle in which he was merely a passenger. Not only was he merely a passenger, it wasn't even the driver's vehicle. In fact, the driver testified it was somebody else's car, and he had been given permission to use it on occasion, and actually said at the trial other people had been given permission to use it. Fourth, the ability to control or exclude others' use of the property. There is nothing in the record that would demonstrate the defendant had any ability to prevent others from using the property. And finally, Property being the car. Yes. And then finally, a subjective expectation of privacy in the property. Again, we're talking about what is his subjective belief in a car that is not his, that is not the driver's, and where they're in public at approximately $245,000. So it's consideration of those factors which would allow any review in court to determine whether or not a defendant has a reasonable expectation of privacy in the car. Now, the argument that's raised by the defendant kind of re-characterizes that, and it's important to look at the case the defendant relies upon. Here, the defendant relies upon Rollins v. Kentucky. And in that case, a pre-forestation effect was necessary. There was a search warrant in the house, and the defendant, prior to the issuance of the search warrant, had put a large quantity of narcotics into somebody else's purse. During the course of that search warrant, that purse was empty, and the woman who was holding the purse told the defendant, take what's yours in terms of the drugs. The argument raised by the defendant in that case is very similar to the argument raised here, which is, by virtue of me putting something into something else, it changes the characteristics of it, and it gives me a reasonable expectation of privacy. Well, the Supreme Court specifically said that is not the case. It went through the discussion of saying, you put it in somebody else's bag. You didn't have the right to exclude anybody from that bag. Other people had access to the bag. And it really does undercut the position articulated by the defendant, which is, somehow, by virtue of putting a loaded weapon into a glove box, it changes something, because it's not what the U.S. Supreme Court has held. And it's important to remember that, because that's what trial counsel, before trial, was looking at. And it must be noted that the circuit court actually inquired at page E2, will there be a pretrial motion in this case? The counsel said no. See, there is a clear statement on the record that counsel was given the opportunity to discuss this and chose not to file a motion. It is defendant's right to demonstrate, one, that his trial attorney's performance was objectively unreasonable, and that's the conversation that we're having right now. And, two, that he was prejudiced. Now, that prejudice would come about whether or not that motion would have been successful had it been litigated. And it is the people's position, for many of the same reasons here, that that motion would not have been successful, and defendant can't demonstrate, one, that his attorney's decision not to file a motion was objectively unreasonable, and, two, that even if that motion had been filed, that that would have been a successful motion. The people did cite three cases, all in Illinois, subsequent to the Michigan East Appellate Court decision that defendant relies upon, demonstrating that Illinois courts have consistently maintained that a defendant does not enjoy property rights when giving your passenger his car. Those are Johnson, Rory Bay, and then the Rockless case that became Rockless v. Illinois in the U.S. Supreme Court. And then Michigan v. Long does really discuss this. It's referenced by defendant and talks about the rights of police officers to search at the time. Are there any further questions? I'm going to put a motion to quash. The defendant's arrested because of the gun, correct? Yes, sir. The officer has no idea whether he has a valid FOI t-shirt, is that correct? Correct. He has no idea whether he has a concealed security license? Correct. Well, how can he arrest him? Because at this point in time, the question is not whether or not each one of the elements of the offense needs to be proven without reasonable doubt. Without reasonable doubt. The officer has to have a basis to arrest him. And in Illinois, at that time and at this time, it's legal to carry a gun. And if you don't ask those questions, how do you know the person's committed a crime? First of all, this is something that could have been questioned by the hearing, which we don't have. Well, that's why you're saying that the lawyer did a bad job here. Ineffective assistance of counsel, yes, because that's their whole argument. That the lawyer missed it. The lawyer did a bad job here because it's clear, or you just conceded, that somebody is arrested for doing something that he could have been absolutely innocent of. That is, in Illinois, if you're carrying a gun, that's not a crime, unless you don't have those FOI t-shirt and a concealed security license, if this is a concealed security case, which is a different question. But just this talk about the FOI t-shirt. It seems to me that under the way this country is today, and the way the law is in Illinois at this time and today, that police officers can't arrest somebody just because they have a gun. You have to find out, I mean, if I have a gun, do you say I can be arrested? You're not going to ask me if I have this legal or not? How can you do that? Well, one of the multiple questions I've gotten, beginning with the people's position, is that the reason why counsel refrained from filing a motion is because there is a serious question whether or not the defendant has any, for lack of a better phrase, the standing to say that search was involved. Because this court and Illinois… The search fell on the guy. He's arrested because of a gun. To me, I don't see the question as standing. Let's go beyond the question of standing. He is arrested because of a gun, and he has a right to say, wait a minute, you can't arrest me because in Illinois at that time and today, I can carry a gun as long as I am licensed to do so, correct? Yes, Your Honor. And the police don't know whether this defendant is licensed to do so. Yet he's arrested. Well, that's not the way the country works. You can't be accused of a crime. They don't have any evidence at all whether their gun is licensed or not. The evidence is the gun itself. It's not the gun itself, because you have to have an FOID card. The gun itself, if anybody is carrying a gun, they may have a good reason to carry a gun. You don't know what their reason is. There's people carrying guns outside this room. You say that they can be arrested because we see them carrying a gun. No, they have a basis to do so. Don't we have to know that before you arrest them? Your Honor, the U.S. Supreme Court has made clear that you do not need proof beyond a reasonable doubt to be arrested. I'm not saying they have a reasonable doubt. They don't even have a doubt. They don't have a reason. They don't know nothing. The officer did have a doubt and had a reason, and the reason was because this defendant, in possession of a weapon, when asked what was that, he implausibly claimed it's a pack of cigarettes. It's not implausible. Is that a crime to say that it's a technical arrest? Is that a crime? No. It's not a crime to tell an officer it's a technical arrest and it turns out to be something else. He's not being arrested for that. That's not the charge. You're trying to change what the issue is. The charge is not that he lied to the police officer, is it? The crime is that he had a gun that he should have had, but you don't know. That officer had no idea whether he had legal possession of that gun or not when he was arrested. You cannot arrest somebody in this country without basis to do so, and it's legal to carry a gun. In your state, the police officer had no idea whether he had possession of that gun legally or not. Do you think it's reasonable? Wait a minute. I'd like an answer to that question. The penal position is that the question of probable cause is based upon the totality of the circumstances. It's not merely a statutory application. The totality of the circumstance is irrelevant, so the question is not whether or not the defendant was arrested for lying about a pack of cigarettes. It wasn't. The question is whether or not all of the factors taken together and implicit in that is a recognition that this person, when asked about a large black object that was put into a glove box... That's not a crime. It's not a crime. Was he charged with it? Was he charged with it? He was charged with unlawful use of a weapon. Okay. Unlawful use of a weapon. In order for it to be unlawful, he has to not have a FOID card. The officer had no idea whether he had it or not, so how could he be arrested? Because the question is not whether or not that simple, discreet inquiry negates the charge. The question is that at the time of the arrest, there are such circumstances to believe that this defendant possessed a firearm. All of those circumstances are met. The question is whether or not... Wait, wait, wait. What are the circumstances? I don't understand. Is it legal to carry a gun in Illinois? Yes. Okay. And in order to be legal, what do you have to do? You have to obtain either, depending on the circumstances, an FOID card, or if you plan on leaving the home, a concealed carry. Okay. So, if you have a gun in the glove compartment... What happened in this case is he was arrested because they found a gun in the glove compartment. Right? Yes. Okay. They don't know if he has an FOID card or not, but they never asked. They never searched. You know, the system or looked it up. They arrested him right away. Is that what we do in this country? You get arrested whether it's legal or not. The question is whether or not it would be a legal determination that this court would evaluate all the circumstances. No, but we're looking at a circumstance. An officer, under the law of this country, is legal to carry a gun. And if we're going to allow police officers to arrest a deputy, whether they have a gun in their hand, that's not what the law provides. It seems to me the officer has it backwards. And if we agree with you that everyone who carries a gun, in Illinois, legally, is in trouble. Because anyone can be arrested, and they're not going to find out whether it was legal or not. That's what you're saying. Why doesn't that sound like a safe? Because the detention there at the scene, had this defendant had a FOID card or concealed carry license, that would be inconsistent with the defendant's behavior. Right. He was a guest. He was a guest. And when you're before a police officer, you've got to be careful. And if you're an African American before a police officer, you better be careful what you say. And this was an African American defendant. Yes, Your Honor. Okay. So, he's going to be really careful what he says. And I don't think the officers really like it for you to speak without a mask. So, they could have absolutely asked, do you have your FOID card? He would have said, I didn't have it. No? Then we're done. Isn't that the way it should proceed? Isn't that the way the law should be? Isn't that what we want police officers to do in this state? The Illinois Supreme Court has made it clear that the probable cause goes to the entire offense based upon the circumstances prior to that. The people would not suggest that if Your Honor was armed right now, and if a police officer said, Your Honor, are you armed? And you would reply, yes, yes I am. There would be likely no basis under those circumstances to say, You're under arrest. Right. However, Would it be reasonable for the officer to assume that the three of us, being judges, might have a FOID card, but it would be unreasonable for them to assume the defender had a FOID card? Just answer that question. The assumption about who has a FOID card really doesn't mention the equation, because the defendant's conduct is somebody who, when given the opportunity to say whether or not I had a gun, the defendant chose not to say that. What conduct are we talking about if you don't ask the question, do you have a FOID card? As a probable accuser? Before any arrest? Is that an intended charge statement? I'm sorry. I'd like to flip that question around. Yes. Under the totality of circumstances, and you've got a guy who's refusing to show the officer what he just put in his apartment, and this officer, there's no testimony that we've heard of that says the officer said, Hey, do you have a FOID card? Or, Hey, give a concealed carry card. But, under any reasonable circumstance, wouldn't somebody who had a FOID card say, Here's my card? Or, Here's my concealed carry card? Oh, I have one. Check it out in your system. Go check it out in your system. These are young men who, they're not dopes. They're smart. They know what the system is. And they know that they've been stopped by cops with marginalized, three cops, two cops there, three guys there, they're all out of the car. One of them says, Oh, there's a, you know, yeah, there's a gun in the glove compartment. The other one has now concealed a gun in the glove compartment and knows that. And everybody's heard of Opelar. We're going to assume that every street kid has heard of Opelar. But even if you don't assume that, if you get stopped driving a car, just driving a car, one of the first things you do is reach for your driver's license to show that you have one. And reach for your insurance card to show that you have one. So if you have a gun, I think the officer looking at this and saying, Hey, yeah, I didn't ask this kid if he had a FOIA card, this man, if he had a FOIA card, but he didn't volunteer it either. And in the absence of that, I have this reasonable suspicion that there's something strange going on. Yes, Your Honor. The people's position states that the question about the FOIA card, the concealed carry permit, is a question that can be based upon the entire set of circumstances. And the circumstances is a defendant who is, to put it sharply, reluctant to acknowledge possession of a firearm. But then, not drawing an inference from that reluctance to then the officer not to determine whether or not he's set that up. I have a right to remain silent. I have a right to remain silent. Yes. But this gets me, because if I don't say anything, you're going to sue me. This isn't saying something that will incriminate you. This is something that will not incriminate you. To get a FOIA card, counsel, you just don't go to the grocery store and buy one like you buy a toll road clipper. You have to go through a process. People know what that process is. It's not easy. You have to pay money. You have to do some certain things. So, you know if you have a FOIA card or if you don't have a FOIA card. It's not a mystery. You know. Exactly. And if you look at the totality of circumstances, this man not admitting that there's a gun, not opening the glove compartment to show that there's a gun, then not volunteering. Oh, it's perfectly. When the officer pulled the gun out, no one in that car apparently said, oh, it's okay. Here's my card. Or go check your system. I've got a FOIA card. It's okay. It's legal. If I were an officer, I'd be like, hmm, there's a piece missing here. There's something suspicious here. And that would give me probable cause. And that is an imposition of power. Counsel, let me ask you a question. Sure. I will claim that it's justice to testify here. Given the totality of the circumstances. When the officer makes a traffic stop and he walks up to your car, the first thing you'll ask for is your license and your insurance card, right? That's right. Okay. Now, we've got a better situation. Counsel, let's see. Well, the first thing you ask for is, well, do you have a FOIA card? Now, that's looking at the totality of the circumstances. That's right. In the abstract, there would be nothing inherently improper with that. Because isn't that the better procedure, counsel, just to ask the question before you start searching in the car? Michigan v. Long makes it clear that the police have the right to search in the car for weapons. But he was not searching. He didn't know he was searching for a weapon. He was searching for an unknown object. He didn't know it was a weapon. That's what's in the record, Your Honor. The officer specifically said, I asked them in fear that he was attempting to conceal a weapon. That's actually wrong, counsel. But he didn't testify that way. As I recall, at the preliminary hearing, that's not what he said. There was a second officer that testified at the preliminary hearing. It's not in the record. Officer Randall testified at that hearing. And the only officer that testified initially was an officer that would not be testifying. When he observed that, his fear was- But he did say he observed initially a large black object, right? That's not a gun. It was, Your Honor. The large black object that he thought he saw was not a gun. He didn't know it could be a gun when he first saw it. Correct. He did not testify that it was a gun. Okay. Is there any law at the time of this incident that required the defendant to tell the police that he stored a gun in the glove compartment? No, there is not an affirmative duty at that time. At that time. Right. Or maybe now. At that time, there's no affirmative duty. So, again, the defendant is doing nothing wrong by remaining silent. It seems that he's being arrested without the officer knowing the totality of the circumstances, whether he has a FOID card or not. And, Your Honor, I appreciate your position, the defendant's position, that by ignoring the fact that this defendant was reluctant to answer the question, specifically articulated a, what would later reveal to be an infallible excuse that I was putting a package of cigarettes away, but the only item was a large black gun, this court is not giving full effect to the officer's understanding of the situation at the time. And that's the key inquiry. Because if we're beyond that, getting the gun, we say, all right, the search was okay. But it's the arrest, there are going to be, it's the arrest for having that gun. And that's a different issue. And that's what I'm talking about. I appreciate Your Honor's position. Well, I'm just testing you. Okay. The language in, it's on the people's brief at page 16, Fairgrave v. United States in Attica, Williams, specifically stated there's no heart-specific element, everything, each element of the offense is not required. The most important element in Illinois, whether a gun is legal or not, is the FOID card. In fact, that was the chart. The chart was, you didn't have an FOID card. And the chart was, you did not have a concealed carry card. Is that right? Yes, Your Honor. Okay. So if those are the charts, then it seems to me the police officer had to have some reason to believe that those things were true. And he had no basis for that on the circumstances of this case. And that precedent would open the doors for police officers to arrest and ask questions later. To the extent that the most important element could be possession of a firearm, the FOID card is an element of the offense. The people understand that. But the failure to have specific proof as to that one element of the offense does not move the case. That is the offense. Having a gun in Illinois is legal. There's nothing wrong with it. You're trying to say it's illegal to have a gun. No, it's not that people specifically stated it is an element of the offense. Right. So you have to have that other element, which is what it was charged with. To me, it makes no sense to say just having a gun is enough when the charge is not having an FOID card. I don't think that's how you represent it. Because under these circumstances, the reasonable inference is that the defendant's repository when confronted with an officer, when asked about the gun that he placed in the glove box, it's demonstrable that somebody who is attempting to evade his detection and somebody who is not saying, hey, it's a gun. I've got a license. A lot of people would probably not say what's in the glove box. They put something in the glove box where they think, you know, whether it is or not, they have to say it, but they think that that's safe. And they can say it before and answer, well, my question is it's not a crime to say, you know, take a cigarette and say it's not a crime. But your reason, it seems to me, for the level of creating a probable cause based upon the fact that it was a fake cigarette. The key position is not the fact that it was a lie that is the criminal offense. It is the totality of a misstatement coupled with the attempt to discreetly hide the weapon before the officer comes. The defendant's unwillingness to open the glove box when asked. But you don't have to, correct? Yes. Correct. It's not a crime. Mrs. Kellogg, please, I'm not opening the glove box. Is that right? No, it's not a crime. Okay. So you're saying that that's evidence of something when it's perfectly okay not to do it. There are any number of other, if you take it outside the setting of this, what could otherwise be an optimist behavior, being in contact with other things taken together? There would be no crime to be in public. But if you're in public without a concealed carry permit, and you've got a gun in your head, and you have the weapon hidden from you, the people's position is you're committing a crime by being in public. The combination of having a weapon, attempting to secret the weapon underneath you, all of these things taken together, what could otherwise be an optimist behavior, when used in totality, is what demonstrates a probable cause of death here. Mr. Connors, why don't you bring your argument to a conclusion? Thank you, Your Honor. If there are no further questions, then for all these reasons, and those taking the people's brief, we ask this question from the ruling of the circuit court. We stand on your brief with respect to those issues you have not concluded, Your Honor. Very good. Thank you, Mr. Connors. Thank you. Ms. Rivers, a brief rebuttal. Thank you, Mr. Bowen. I mean, the key argument would remove the law of probable cause. Officers have to ask the question so they can establish probable cause that an offense was committed. We can't rely on the defendant's decision not to volunteer his information. I mean, people have been shot reaching for glove compartments, and there could be a number of reasons to explain his behavior.  He could be nervous. And it's absurd to say that probable cause can be based on the person's conduct here of not wanting to open up the compartment and lying to the police officer. That's not evidence of a crime. But when we talk about facts and circumstances, which is what Mr. Connors is talking about, isn't it also a fact and circumstance that the defendant happened to be black, and that a young black man in the city of Chicago and having an interaction with police officers is a situation that has to be taken into account as well? Again, that could be a reason why he gave his answers and didn't refuse to open up the compartment. If he opened up the compartment and they saw what was on him, he could have been, you know, it could have been overreaction, he could have been shot. That's part of the totality of the circumstances that need to be considered, that he's a young African-American man being stopped by the police in the evening. I don't know if that is evidence of a legal analysis of probable cause. I think that's just a factor. But we're talking about facts and circumstances. That's what you're talking about, facts and circumstances. Don't you have to take into account the defendant himself or herself, who that person is? If it's a white person, if it's a police officer off duty, if it's a nun, I mean, maybe the police are going to react differently. But if you're a young black man in Chicago, all you have to do is listen to the news. Listen to the news. And make witnesses. Okay. Yeah, I think that could be an explanation for his behavior. But the bottom line here is the officers did not ask the questions as quickly. I think it's a mistake. Michigan v. Long did not give officers the ability to just willy-nilly go into any car and search. You have to have a reasonable belief in danger, and the counsel ignores that. And finally, there could have been no strategic reason not to do this. Apparently, the defense counsel, as well as many police officers, were ignoring Aguilar and going on about their business as if that had been decided. I don't know if there were a white officer arresting this young black man in Maywood. Does that change the equation? I don't know. I have no official information. I really hesitate to make assumptions based on people's race. I think there have been problems with police officers and young men, no matter what race the officer is. What if it was the village of Maywood and not the city of Chicago? And the expectation, the reasonable expectations of police officers in Maywood is different based on their experience than the experience of police officers in Chicago. Does that change the equation? Different how? Well, the experience of officers in Wilmette is different than the experience of officers in Chicago and clearly different than the experience of officers in Maywood. Does that change the equation? I don't think so. Is it just based on what the experience of the officer is? Well, you may have a certain experience in a certain neighborhood. You cannot assume that because you're in a certain neighborhood that people are more likely to be part of them. I'm not talking about neighborhoods. I'm talking about privacy business and what your expectations are. You've had a thousand arrests and your experience in those thousand arrests is yes, you've become familiar with what marijuana smells like, and yes, you've been familiar with what guns look like, and yes, you've been familiar with what burglary tools look like. That may differ depending on what kinds of crimes are being committed in different communities. Well, the police officers may be more wary in a certain location because of their knowledge of crimes, but each case, there has to be a problem causing. You cannot consider where the stop happens to be. There has to be behavior that there's a reasonable belief that that behavior is an offense and all these types of things with a gun. I absolutely agree with that except for the fact that officers' experiences will vary based on their service in the police department, what departments they've been in, how many arrests they've made, how many people they've dealt with as suspects, what community they live in, what the statistics in that community are. Those things do matter. Problem causing is at the standard, and so what the experience of that particular police officer, I think, is basically relevant to that analysis. Do you want me to confirm? No, I don't. You're asking us to do what? Remand for the proceedings for opportunity for defendants to file a motion to quash and suppress and also for resentment based on the issue. Is the defendant served his sentence? Yes. He's no longer incarcerated? That's correct. Thank you. Thank you. Does that move the question concerning his sentence? No, because it would still be on his record as a class 2. Well, he can't reduce the time he's going to serve. It would just reduce the class. Obviously, it couldn't affect the sentence. It's been served. Okay, thank you. Thank you. Ms. Rivers, or Ms. River, Ms. Collins, the court would like to thank you for your briefs and your arguments. You presented a most interesting case for this court to resolve. I'd also like to thank the Office of the State Appellate Defender and the State Attorney's Office for agreeing to come out here and make this presentation to the students at South Suburban College. This case is going to be taken under advisement, and this court now stands in recess. Would you turn off the, that's it.